392 A.2d 1313

COMMONWEALTH of Pennsylvania

v.

Lawrence WITHERSPOON, Appellant (two cases).

Supreme Court of Pennsylvania.

Submitted Oct. 17, 1977.

Decided Oct. 5, 1978.

Defender Assn. of Phila., John W. Packel, Asst. Defender, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

NIX, Justice.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County which denied appellant relief

under the Post-Conviction Hearing Act.[1] In view of our disposition of the case we need only consider appellant's claim that his two trial attorneys failed to provide effective assistance at trial, specifically in allowing, without objection, repeated references to statements of a co-defendant implicating appellant. For reasons which follow, we agree with appellant that trial counsel was ineffective and that appellant is entitled to the award of a new trial.

Appellant was arrested on December 8, 1964, and charged with murder, burglary and aggravated robbery arising from a robbery of a bar which occurred on November 4, 1964, during which a patron, Joseph Ambrose, was shot and killed by appellant. After trial by jury appellant was found guilty of murder of the first degree, aggravated robbery and burglary. He received a sentence of life imprisonment for the murder conviction and was sentenced to 10 to 20 years imprisonment on both the robbery and burglary indictments. The sentences were made to be served consecutively. Thereafter, appellant filed a direct appeal to this Court, wherein the judgments of sentence were affirmed. *Commonwealth v. Witherspoon*, 442 Pa. 597, 277 A.2d 826 (1971).[2] Subsequently, a petition was filed pursuant to the Post-Conviction Hearing Act[3] seeking relief. After a hearing the petition was denied and this appeal followed.

 The record reflects that during the course of the trial repeated references were made to hearsay statements of

---

1. This Court's jurisdiction to hear this appeal from an order denying post conviction relief in a case involving felonious homicide is pursuant to the Act of Jan. 25, 1966, P.L. (1965) 1580, § 11, 19 P.S. 1180-11 (Supp.1978-79) and the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. 211.202(1) (Supp.1978-79). The appeal from that portion of the order denying relief under the convictions of burglary and robbery have been transferred to this Court from the Superior Court.

2. On direct appeal appellant was represented by trial counsel, thus the failure to raise an ineffective claim in that proceeding cannot be deemed a waiver of the issue. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

3. Act of Jan. 25, 1966, P.L. (1965) 1580, § 1 et seq., 19 P.S. 1180-1 et seq. (Supp. 1978-79).

Ernest Satchell, a co-defendant, in which Satchell admitted his participation in the robbery and implicated appellant as the other participant and as the person who shot and killed the victim. At one point an objection was made, however the grounds offered for that objection was that defense counsel had not been afforded an opportunity to see Satchell's statement. Counsel was given an opportunity to review the statement and the objection was withdrawn.[4] At another point in the trial defense counsel requested that the complete statement of Satchell be read to the jury. After an objection by the prosecution and an off-the-record discussion with the court, the request was not pursued.

The examination and cross-examination of witnesses and the determination as to when to interpose objections are matters clearly within the province of trial counsel. See A.B.A. Standards Relating to the Prosecution's Function and the Defense's Function, § 5.2(b) (1971) (the decision on what witnesses to call, whether and how to conduct cross-examination . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client). It is also apparent that this evidence was inadmissible hearsay and its admission violated appellant's constitutional right of confrontation. *Commonwealth v. McDowell*, 460 Pa. 474, 480, 333 A.2d 876, (1975); *Commonwealth v. Ransom*, 446 Pa. 457, 464 n. 4, 288 A.2d 762, 765 n. 4 (1972); *Commonwealth v. Ellsworth*, 409 Pa. 505, 513, 187 A.2d 640, 643 (1963); *Commonwealth v. Epps*, 298 Pa. 377, 380, 148 A.2d 523, (1930); *Commonwealth v. Antonini*, 165 Pa.Super. 501, 503, 69 A.2d 436, (1949).

This situation was further compounded by the failure of counsel to object to the prosecution calling Satchell as a witness to testify that he had entered a plea of guilty to murder generally and that the court en banc returned a verdict of murder of the first degree. Mr. Satchell refused to testify as to the circumstances surrounding the robbery-

4. Where a specific objection is interposed, other possible grounds for the objection are waived. *Commonwealth v. Budd*, 443 Pa. 193, 195, 278 A.2d 879, 880, (1971).

murder, asserting his rights against self-incrimination. The testimony of Mr. Satchell as to the resolution of the proceedings against him was not only irrelevant in the trial of appellant, but also very prejudicial.

In assessing a claim of ineffective assistance of counsel, as to trial decisions which fall within areas where counsel had the full responsibility for making the judgment, we have set forth the following criteria:

"The right to representation by counsel to be meaningful necessarily includes the right to effective representation." *Commonwealth v. Wideman,* 453 Pa. 119, 123, 306 A.2d 894, 896 (1973). There is, however, a presumption that counsel's representation was competent, *Commonwealth v. Murray,* 452 Pa. 282, 305 A.2d 33 (1973); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967), and it is an accepted principle within our criminal justice system "that certain decisions during trial are within the exclusive province of counsel." *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A.2d 456 (1972). In cases of this nature we are required to make an independent review of the entire record and an examination of counsel's "stewardship" of the now challenged proceedings in view of the available alternatives. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967); *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A.2d 236 (1967). In *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 325 A.2d 344, 352–53 (1967), the test to be employed in determining whether counsel was effective was set forth:

". . . our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record.

It follows, that if an independent examination of the record reveals a reasonable basis for the strategy em-

ployed by counsel, that strategy is imputed to the appellant. *Commonwealth v. Sullivan*, 450 Pa. 273, 299 A.2d 608 (1973). The Court will not substitute its determination for that of counsel as to what course of action would have been more effective in promoting the client's interest. Rather, the only inquiry is whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered as advancing and protecting the appellant's interest. *See Commonwealth v. Hill*, 450 Pa. 477, 482, 301 A.2d 587, 590 (1973). As we have acknowledged before, our primary concern is whether the accused's rights have been adequately protected. *Commonwealth v. Pride*, 450 Pa. 557, 301 A.2d 582 (1973)." (Footnotes omitted).

*Commonwealth v. Roundtree*, 469 Pa. 241, 248–49, 364 A.2d 1359, 1362 (1976).

After studying the record before us we are satisfied that counsel's failure to exclude this evidence can not be justified on the theory of a legitimate trial strategy. We find the explanations proffered by the Commonwealth for counsel's actions to be unpersuasive.

The Commonwealth advances the theory that counsel sought to emphasize the fact that the shooting of the victim was accidental. While it is true that the version given by Satchell gave support to an unintentional slaying the prosecution's theory was that of felony-murder and under the law at the time of this offense it was immaterial that the killing may have been accidental.[5] Furthermore, the only theory offered to the jury was that of felony-murder. Thus highlighting the fact that the killing was not intentional, was legally of no significance and could not have provided a basis for the avoidance of a verdict of murder of the first degree.

5. At the time of this crime the Act of June 24, 1939, P.L. 872, § 701, as amended 18 P.S. § 4701 was in effect. The felony-murder theory of murder in the first degree was applicable regardless of any question of intent. *Commonwealth v. Edwards*, 380 Pa. 52, 57, 110 A.2d 216, 218 (1955); *Commonwealth v. Wooding*, 355 Pa. 555, 557, 50 A.2d 328, 329 (1974).

The Commonwealth suggests that this emphasis might have been intended to persuade the jury not to return a sentence of death. This argument ignores the fact that the procedure at that time provided for a bifurcated trial and during the adjudicative stage the jury was instructed not to consider the question of penalty. The unintentional nature of the killing could have been stressed after the degree of guilt had been determined. Following this tactic appellant would have had the advantage of this information being before the jury without being subject to the prejudice that this testimony was likely to have in the determination of guilt. We also must reject the theory that this approach was a legitimate appeal to the mercy dispensing power of the jury in an effort to secure a conviction of a lesser degree of homicide. There was no serious contention that the killing was intentional. To allow damaging testimony to enter simply to gain an advantage which was virtually conceded cannot be deemed the strategy that competent counsel would employ.

There are unquestionably instances where trial counsel may properly elect to allow the introduction of technically objectionable testimony where there is an advantage to be gained by its admission. For example the U.S. Supreme Court recognized that counsel may properly allow his opponent to introduce objectionable evidence where the defense is in possession of information to contradict that testimony and thereby create an issue of credibility which might provide a basis for a jury to acquit. *Henry v. Mississippi*, 379 U.S. 443, 451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). In *Commonwealth v. Goosby*, 461 Pa. 229, 336 A.2d 260 (1975) we approved of trial strategy which waived an objection to the admissibility of a statement of the defendant where the statement indicated that the shooting might have been in self-defense or at least in the heat of passion. There we reasoned that although the statement admitted the shooting, the prosecution had eyewitnesses who had presented impressive evidence to establish that appellant was the perpetrator. In that situation we concluded:

"[b]y acquiescing to the admission of the statement and by using the exculpatory portions of it to rebut or weaken the prosecution's very strong case, counsel had an eminently '*reasonable basis* designed to effectuate appellant's interest.'"

However, in *Commonwealth v. Zapata*, 455 Pa. 205, 314 A.2d 299 (1974) we held that trial counsel was ineffective for eliciting testimony of defendant's convictions for charges (which could not have been otherwise introduced). In that opinion we had occasion to observe:

"Even where its use is properly limited to impeaching credibility, the introduction of a defendant's criminal record possesses a potential for severe prejudicial impact on a jury. Thus, there would rarely be a time when the introduction of such evidence would produce some result favorable to the defendant. Nevertheless, there may be situations where a defense attorney is substantially certain that the prosecution will utilize a defendant's prior convictions if he decides to testify. In those situations, it may be reasonable trial strategy for the defense counsel to bring those convictions out on direct examination in order to minimize their impact, thus muting the prosecution's thunder. Before doing so, however, counsel should be convinced that such evidence is available to the prosecution, *i. e.*, that the convictions would properly be admissible to impeach the defendant's credibility. In the absence of such certainty, counsel would be acting 'ineffectively' if he introduced an aspect of his client's criminal record which was, in fact, not competent evidence. Thus, our present inquiry must focus on whether counsel for the appellant justifiably believed that the record of these convictions was admissible."

*Id.*, 455 Pa. at 208, 314 A.2d at 301.

We are constrained to conclude that the acquiescence to the admission of clearly inadmissible evidence, from a co-defendant, which identified appellant as a participant in the robbery and as the shooter cannot be said to have been designed to effectuate the best interest of the appellant

where the motive was to stress a fact that was not being seriously contested and was of no legal consequence. Nor is this conclusion shaken by the assertion that there was impressive, competent evidence of guilt. The mere fact that there may be a strong case against an accused does not relieve counsel of the responsibility to provide the most vigorous defense possible, where the election has been made to go to trial. Certainly the least that a defendant might expect is that his lawyer would take the necessary measures to exclude incompetent, damaging testimony. The minimal advantage to be derived from this evidence was so clearly overshadowed by its prejudicial effect that the conclusion that counsel was ineffective is inescapable.

Judgments of sentence are reversed and a new trial is ordered.

POMEROY and LARSEN, JJ., filed dissenting opinions.

POMEROY, Justice, dissenting.

The majority concludes that the two lawyers who represented the appellant in his 1964 trial for murder were ineffective in failing to object to the introduction of the alleged hearsay statement of a co-defendant which implicated appellant; a new trial is therefore awarded. A review of the record convinces me that acquiescence in the introduction of the statement was a reasonable way to form a basis to appeal to the mercy dispensing powers of the jury. I am also satisfied that even if the failure to try to exclude the damaging statement amounted to ineffectiveness, it was beyond a reasonable doubt harmless error. I therefore respectfully dissent.

In the case at bar, the Commonwealth introduced at trial compelling physical evidence linking appellant with the robbery-murder. Additionally, three witnesses placed appellant at the scene of the crime and two witnesses identified him as the individual who fired the fatal shot at point blank range. Finally, the prosecution introduced the defendant's own confession given to the police shortly after his apprehension. It is against this background of overwhelming evidence that

the non-objection of trial counsel to the introduction of the co-defendant's statement—while no doubt an instance of prosecutorial "overkill"—must be viewed. That statement, while implicating the defendant, also placed before the jury facts suggesting that the shooting was accidental.[1] While such facts would not constitute a valid defense to felony-murder, it is likely that they could appeal to the mercy dispensing powers of the jury.[2] We have previously acknowledged that where evidence of guilt is strong, it may be reasonable to concede certain facts in the interest of possibly obtaining a verdict on a less serious degree of the offense:

"Once again irrespective of the voluntariness of the confession, it must be noted that no objection was made at trial to the introduction of the confession and in view of counsel's attempt to avoid the imposition of the death penalty, his failure to object, even assuming that he had concluded that the confession was involuntary, was a tactic within the permissible range of prudent representation of his client's interests." *Commonwealth v. Ganss*, 400 Pa. 602, 605–06, 271 A.2d 224, 226 (1970).

See also *Commonwealth v. Rice*, 477 Pa. 221, 383 A.2d 903 (1978) (plurality opinion)—(defendant's reiteration of confession was reasonable where intent was to deny particular elements of the crime); *Commonwealth v. Skurkis*, 465 Pa. 257, 348 A.2d 894 (1975)—(degree of guilt hearing waived where evidence might establish murder of the first degree); *Commonwealth v. Fields*, 463 Pa. 244, 344 A.2d 814 (1975)—

1. It is important to note that a defendant's own admission of guilt is the most damaging sort of evidence. Thus, while it is doubtful that corroborative statements of a co-defendant will contribute to the impression of guilt wrought in the juror's mind by the defendant's admission, it is entirely plausible that the co-defendant's version of the episode could add credibility to the defendant's otherwise self-serving claim that the shooting was accidental. Such a reasonable basis would be sufficient to render counsel's conduct effective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 559, 235 A.2d 349 (1967).

2. Had the jury returned a verdict of murder of the second degree, appellant would not have been subject to the possibility of a sentence of death. See the Act of June 24, 1939, P.L. 872, § 701, as amended, 18 P.S. § 4701, which was in effect at the time of appellant's trial.

(recommendation of guilty plea with certification that crime rose no higher than murder of the second degree reasonable where evidence indicated murder of the first degree); *Commonwealth v. Goosby*, 461 Pa. 229, 336 A.2d 260 (1975)—(held effective strategy where confession admitted without objection in order to establish elements of defense); *Commonwealth v. Zapata*, 455 Pa. 205, 314 A.2d 299 (1974)—(reasonable trial strategy may involve eliciting damaging testimony on direct examination so as to reduce the impact of its use on cross-examination); *Commonwealth v. Sullivan*, 450 Pa. 273, 299 A.2d 608 (1973)—(reasonable strategy to forego charge on particular offense so as to limit options of the jury); *Commonwealth v. McGrogan*, 449 Pa. 584, 297 A.2d 456 (1972)—(same).

Even were the majority correct, however, in finding trial counsel to have been constitutionally ineffective, I continue to be satisfied, as was the unanimous Court in 1971, that the case "against appellant was so overwhelming that even if there had been a violation of appellant's constitutional rights, it was harmless beyond a reasonable doubt." *Commonwealth v. Witherspoon*, 442 Pa. 597, 600, 277 A.2d 827, 829 (1971) (affirming the present appellant's conviction on direct appeal). The introduction of the co-defendant's statement did no more than reiterate the admission of the defendant and inject the possibly helpful theory of accident. *See* n.2, *supra*. As was noted in *Commonwealth v. Badger*, 482 Pa. ——, 393 A.2d 642 (1978) (dissenting opinion of Pomeroy, J.):

> "To hold that any ineffectiveness of counsel, no matter how trivial the fault, is *per se* ground for a new trial places an unjustified burden on the judicial system, one not required by the demands of due process of law in the trial of criminal cases." 482 Pa. at ——, 393 A.2d at 649.

LARSEN, Justice, dissenting.

The evidence was so overwhelming in this case that the perceived errors cited by the majority are harmless beyond a reasonable doubt. Three witnesses identified appellant as

332

holding the gun during the robbery and two witnesses saw him fire the weapon at deceased's head. A police technician positively identified the weapon found in appellant's car as the murder weapon. And finally, appellant confessed to the burglary, the robbery and the shooting.