346 A.2d 547
**COMMONWEALTH of Pennsylvania**
v.
**Walter LASCH, Appellant.**

Supreme Court of Pennsylvania.

Argued April 7, 1975.

Decided Oct. 30, 1975.

260

Richard P. Hunter, Jr., Gary A. Shapiro, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Glenn S. Gitomer, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

PER CURIAM:

This is an appeal from the judgment of sentence (four to fifteen years imprisonment) imposed on Walter Lasch, following his conviction by a jury of murder in the second degree.

The prosecution stemmed from the fatal stabbing of Paul Speaks in Philadelphia on December 17, 1972. Lasch made a statement to the police admitting he committed the stabbing. A pretrial motion to suppress evidence of this statement was overruled and at trial it was admitted against Lasch over timely objection. We rule the statement should have been suppressed and evidence thereof excluded at trial for reasons that follow. We will, therefore, order a new trial.

■ These facts were established by the Commonwealth's own evidence during the suppression hearing and again at trial, and hence, must be accepted as true for the purposes of this appeal. *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968).

■ Lasch was taken into police custody at 1:50 a.m. on January 15, 1973, for an alleged narcotics violation. A warrant for his arrest on the charge of murder of Speaks had been previously issued on December 18, 1972, and on the basis of this warrant Lasch was transferred to Homicide Headquarters in the Police Administration Building at 3:50 a.m. for questioning. There, he was told immediately of the murder charge against him, but he was not informed of his constitutional rights, as defined by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Lasch was then handcuffed to a chair and left alone in a room until 9:30 a.m.

At 9:30 a.m. Lasch was first questioned about the Speaks' killing. Before this questioning began, he was warned of his *Miranda* rights and again informed of the reason for his arrest. Lasch indicated he understood his rights and was willing to answer questions, but stated he knew nothing about Speaks' killing. This period of questioning continued until 1:30 p.m. with one interruption for about thirty minutes at 11:00 a.m., when Lasch was given something to eat. Throughout this questioning, Lasch insisted he did not know Speaks and was not involved in his killing. At 1:30 p.m. Lasch was again handcuffed to a chair and left alone until 3:00 p.m. He was then escorted to the bathroom, fed, and again handcuffed and left alone until 5:00 p.m.

At 5:00 p.m. the questioning resumed and continued for about one hour. It was during this period that Lasch first incriminated himself. Beginning at 6:40 p.m. and continuing until 7:40 p.m., a detailed incriminating statement admitting the stabbing was made in answer to po-

lice questions. This statement was recorded. Following its preparation in typewritten form, it was shown to Lasch, but he refused to sign it. Lasch was arraigned before a judge acting as a committing magistrate sometime (the record does not disclose the hour) on January 16th.

Admitting that Lasch was in police custody on the murder charge for at least thirteen hours without arraignment before incriminating himself, the Commonwealth nonetheless contends his incriminations were not the product of this delay, and hence, evidentiary use of these incriminations was not proscribed under our decision in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), and subsequent related decisions. See also Pa.R.Crim.P. 122. We disagree.

As noted before, during the first thirteen hours of his custody, Lasch continuously and steadfastly proclaimed his innocence. It was only after prolonged incommunicado incarceration and interrogation that he deviated from this position and admitted his guilt. There is nothing in the record to show that anything else but the prolonged incarceration caused this change. In these circumstances, it can hardly be said the incriminations and delay were unrelated. *Commonwealth v. Cullison*, 461 Pa. 301, 336 A.2d 296 (1975); *Commonwealth v. Parker*, 458 Pa. 381, 327 A.2d 128 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); and *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973).

█ Finally, the Commonwealth argues if evidentiary use of the incriminating statement were error, it was harmless.* Again, we disagree.

---

* As noted before, a pretrial motion to suppress evidence of the incriminating statement was denied after an evidentiary hearing. Later this evidence was admitted at trial over objection. However, the trial judge in support of the court's order denying the motion for a new trial filed an opinion wherein he conceded the evidence should have been excluded under *Commonwealth v. Futch*, supra, but ruled the error was harmless in the circumstances.

The killing occurred during a physical encounter between Speaks and Lasch, immediately after they argued and left the residence of one Carleen Hawkins, who at the time was a girl friend of Lasch, but previously had been a girl friend of Speaks. One Carl Salley who was in the Hawkins' residence at the time witnessed the encounter and testified for the Commonwealth that Lasch committed the stabbing. Additionally, Miss Hawkins testified that when Lasch re-entered her residence immediately after the fatal fight, he said, "I think I killed him." Finally, Lasch did not testify at trial and offered no evidence disputing the testimony of the Commonwealth witnesses.

Emphasizing the foregoing, the Commonwealth argues evidentiary use of Lasch's incriminating statement at trial had little, if any, significance and probably had no influence on the jury's verdict; hence, its use was harmless. *Commonwealth v. Townsell*, 457 Pa. 249, 320 A.2d 111 (1974), is the only decision cited in support of this position.

In the first place, only three Justices of the Court of six participating voted for the opinion announcing the judgment of the Court in *Townsell*. The opinion is, therefore, not decisional. See *Commonwealth v. Silverman*, 442 Pa. 211, 275 A.2d 308 (1971). Moreover, even the opinion expressing the view that the use of the incriminating statement in *Townsell* was harmless error cautioned that this conclusion was based on the singular facts of that case. Finally, the testimony in *Townsell* was materially different than that here.

Neither Miss Hawkins nor Carl Salley, the key Commonwealth witnesses, were disinterested parties. The former testified Lasch was her boy friend for two weeks while she had dated Speaks for five years. She also knew Carl Salley for over three years. Moreover, her testimony against Lasch was seriously weakened by the showing during cross-examination of prior inconsistent

264

statements. Finally, she acknowledged that upon hearing Speaks was injured, she did not attempt to reach either the police or a hospital, but instead left her residence immediately. The quality of her testimony left something to be desired.

While Salley positively identified Lasch as the individual who stabbed Speaks, his credibility was also shaken during cross-examination. His testimony concerning the fight was inconsistent with the testimony of the Commonwealth's medical expert. Furthermore, he made no effort to assist Speaks or contact a doctor or a police officer after the stabbing.

The significance of the evidence of Lasch's self-incriminations thus becomes eminently clear. Confronted with two witnesses of questionable reputation and discredited credibility, the jury probably found Lasch's own incriminations to be persuasive evidence. In fact, the trial judge encouraged them to conclude so by instructing them over objection that, "Once it is established that a confession is truthful, *it is the strongest evidence of guilt.*" (Emphasis supplied.) The jury thus could have rejected the testimony of Carl Salley and Carleen Hawkins and convicted Lasch solely on the basis of his incriminations, or have found his admissions of guilt dispelled any doubt entertained because of the other testimony. Use of this evidence can hardly be classified as "harmless error" in these circumstances.

Judgment reversed and a new trial is ordered.

JONES, C. J., and EAGEN and POMEROY, JJ., dissent.